IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MICHAEL EVERETT, | § | |
| | § | No. 472, 2015 |
| Respondent Below-Appellant, | § | |
| | § | Court Below: |
| v. | § | Family Court of the |
| | § | State of Delaware |
| MATTHEW R. AND SANDY L. | § | |
| SCOTT, | § | |
| | § | |
| Petitioners Below-Appellees. | § | File No. CN15-01718 |

Submitted: April 13, 2016
Decided: April 26, 2016

Before **STRINE**, Chief Justice; **HOLLAND** and **VALIHURA**, Justices.

## **O R D E R**

This 26th day of April 2016, upon consideration of the appellant's briefs, the appellees' response, and the record below, it appears to the Court that:

(1)    The appellant, Michael Everett ("Everett"),[1] filed this appeal from the Family Court's August 13, 2015 Order granting a Petition for Third Party Visitation (the "Petition") filed by the appellees, Matthew Scott ("Matthew") and Sandy Scott (jointly, the "Scotts"). In the Petition, the Scotts sought a court order establishing their right to visitation with Everett's daughter, "C." The Family Court ordered monthly visitation over the objections of C.'s parents, Everett and Samantha,[2] after finding their objections

_____

[1] This Court assigned pseudonyms to the parties pursuant to Delaware Supreme Court Rule 7(d).
[2] Samantha, C.'s mother, was a respondent below, but did not appeal the Order. She is referred to herein by her first name only.

1

to be unreasonable.[3]  We AFFIRM the judgment of the Family Court.

(2)     Everett and Samantha are divorced.  In 2010, during their marriage, they had one child, C.  Everett has sole custody of C.  At the time of the hearing before the Family Court, Samantha, who suffers from mental illness, had limited visitation with C., which was conducted under Everett's supervision.  In March 2015, Everett, who is now remarried, filed a *pro se* Petition to Terminate Parental Rights against Samantha (the "TPR").  Based upon the record before this Court, the TPR was pending at the time of both the hearing and the Family Court's Order in this matter.

(3)     Matthew is Samantha's father and C.'s grandfather.[4]  The Scotts enjoyed a close relationship with C. during her early childhood.  For a period of approximately six months during C.'s first three years of life, Samantha and C. lived with the Scotts.  During that time, the Scotts provided C. with her own room and converted their living room into a playroom for her use.  After Everett and Samantha divorced, Everett permitted the Scotts to visit with C. on an "*ad hoc*" basis approximately twice per month.  Beginning in 2014, Samantha lived with the Scotts while recovering from an attempted suicide.  Everett informed the Scotts that he did not want Samantha present during their visits with C.  Nevertheless, the Scotts encouraged Samantha to attend.  In October 2014, Everett cancelled one of C.'s visits with the Scotts when he noticed Samantha was at their home.  Thereafter, Everett refused to permit any further contact between C. and the Scotts.  On February 18, 2015, the Scotts filed the Petition.  In March 2015, Samantha

---

[3] [*Scott v. Everett*], No. CN15-01718 (Del. Fam. Ct. Aug. 13, 2015) [hereinafter, "Fam. Ct. Order at Op. Br. __"].

[4] Sandy Scott is Samantha's stepmother.

2

left the Scotts' home.  Samantha and the Scotts have been estranged since then.

(4)     At the Petition hearing, the Scotts were represented by counsel, while Everett and Samantha appeared *pro se*.  Samantha and Everett both objected to the Petition.  The Family Court heard testimony from Matthew, Everett, Samantha, and Samantha's brother, James.  During Everett and Samantha's testimony, the court asked questions concerning their objections to visitation.  The court invited Everett to cross-examine Matthew, but Everett elected not to do so.  The Family Court asked if either Everett or Samantha wanted to cross-examine Matthew after his testimony on redirect, and Samantha elected to do so.  Both Everett and Samantha cross-examined James.  The trial court also permitted Samantha to read a prepared statement during her direct testimony.

(5)     Samantha alleged that Matthew abused her as a child.  She also claimed that the Scotts disregarded instructions she and Everett had provided to them concerning pacifier use and treats.  Samantha further argued that the Scotts insisted she attend their visits with C., even when she advised against it based on her mental state.  Everett joined Samantha's allegations of abuse, arguing that Matthew was controlling and manipulative.  He also objected to Samantha's presence during C.'s visits with the Scotts, but conceded that Samantha's estrangement from the Scotts had resolved this concern.  Everett further asserted that the Scotts kept gifts for C. at their home rather than sending them to his home.

(6)     The Family Court granted the Petition after finding that Everett and Samantha's objections were unreasonable, that "[t]here was no evidence" that visitation

3

would interfere with C.'s relationship with Everett, and that visitation with the Scotts—who, according to the court, "love and adore their granddaughter"—was "clearly in [C.'s] absolute best interest." Specifically, the court found that the change in Samantha's relationship with the Scotts mooted Everett's objection concerning Samantha's presence during the Scotts' visitation. The trial court also found "no evidence to support" Samantha's allegations of abuse and observed that the Scotts had never mistreated C. Finally, the Family Court determined that Everett and Samantha had "not voiced any complaints about interference with their relationship [with C.], other than normal, but minimal grandparent spoiling."

(7) On appeal, Everett's arguments can be distilled into three principal assertions. *First*, he contends that the Family Court failed to adhere to Delaware's Judicial Guidelines for Civil Hearings Involving Self-Represented Litigants (the "Guidelines").[5] *Second*, Everett asserts that the Family Court's Order was not the product of an orderly and logical deductive process. *Third*, Everett argues that the Order is unconstitutional and contrary to Delaware law. Everett states in his Opening Brief that none of these issues was preserved in the Family Court, but that the "interests of justice

---

[5] Specifically, Everett claims that the Family Court deviated from the Guidelines by: (i) making certain questions and comments to him during the hearing, which he suggests demonstrated a lack of neutrality; (ii) failing to explain certain Guidelines to the *pro se* parties; (iii) taking insufficient steps to make Samantha comfortable at the hearing; and (iv) permitting leading questions without advising the *pro se* parties to object. The Guidelines are provided to the judiciary in Appendix E to this Court's Operating Procedures for the Delaware Judicial Branch (the "Operating Procedures"), which instruct judges to "refer to [the Guidelines] . . . in their efforts to balance self-represented litigants' perception of procedural fairness while maintaining neutrality in the courtroom, particularly when one party is self-represented and one has an attorney." *Operating Procedures for the Delaware Judicial Branch*, DEL. STATE COURTS, at ¶ VI.5, *available at* http://courts.delaware.gov/supreme/operating-procedures/op-full.aspx [hereinafter, "Operating Procedures at __"].

require that th[is] Court consider and determine questions not presented to the trial [c]ourt because of the lack of knowledge and explanations from the trial [c]ourt as to the self-represented litigant."

(8) Under Supreme Court Rule 8, this Court may only "consider a question [raised] for the first time on appeal 'when the interests of justice so require.'"[6] This exception "is extremely limited and invokes a plain error standard of review."[7] "Plain error requires the error to be 'so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process.'"[8] Otherwise, the Family Court's legal conclusions are reviewed *de novo*, and its factual findings will not be disturbed unless they are clearly erroneous.[9] "We will not substitute our opinion for the inferences and deductions of the trial judge if those inferences are supported by the record."[10] Accordingly, if the Family Court's findings "are sufficiently supported by the record and are the product of an orderly and logical deductive process, in the exercise of judicial restraint we accept them, even though independently we might have reached opposite conclusions."[11] We conclude that the Family Court did not err and, accordingly, affirm.

(9) Before granting the petition for third-party visitation, the Family Court had to find that visitation was in the best interests of C. and, in light of Everett and Samantha's objections to visitation, that the Scotts had shown by clear and convincing

---

[6] *Clark v. Clark*, 47 A.3d 513, 518 (Del. 2012) (quoting *Russell v. State*, 5 A.3d 622, 627 (Del. 2010)); *see also* Del. Supr. Ct. R. 8.
[7] *Clark*, 47 A.3d at 518 (citation omitted).
[8] *Id.* (quoting *Russell*, 5 A.3d at 627).
[9] *Samuels v. Jowers*, 2015 WL 6941590, at *2 (Del. Nov. 10, 2015).
[10] *Id.* (citing *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979)).
[11] *Levitt v. Bouvier*, 287 A.2d 671, 673 (Del. 1972).

5

evidence that Everett and Samantha's objections were unreasonable.[12]  The Family Court also had to conclude that the Scotts had demonstrated by a preponderance of the evidence that visitation would not substantially interfere with Everett and Samantha's relationship with C.[13]

(10)  The parties agree that the Guidelines are not binding upon judges.  Indeed, trial judges have broad discretion to manage hearings.[14]  In the exercise of his or her discretion, a trial judge may question witnesses.[15]  When a hearing involves *pro se* parties, Guideline 1.1 suggests that judicial questions are a proper means of reaching the merits of a case.[16]  However, the court must balance its pursuit of the merits with its obligation to remain neutral.

(11)  The Family Court did not err in managing the hearing.  The record in this case demonstrates that the court properly assumed an active role to ensure that Everett presented both the merits of his position and his objections, which were essential to the court's analysis under the third party visitation statute.  Through some questioning, the Family Court clarified its understanding of Everett's objections and encouraged Everett to "be specific and explain."  On balance, the Family Court's questions and comments to Everett reflect an attitude of neutrality.

---

[12] 13 *Del. C.* § 2412(a)(2)(d).
[13] *Id.*
[14] *See Czech v. State*, 945 A.2d 1088, 1095 (Del. 2008) ("It is well-settled that a trial judge is responsible for management of the trial and is vested with broad discretion to perform that function.").
[15] D.R.E. 614(b) ("The court may interrogate witnesses, whether called by itself or by a party.").
[16] App'x E to Operating Procedures at ¶ 1.1 ("It is proper that Judges exercise their discretion to assume more than a passive role in assuring that during litigation the merits of a case are adequately presented through testimony and other evidence.  While doing this, Judges shall remain neutral in the consideration of the merits and in ruling on the matter.").

(12) Everett argues that the Family Court should have explained certain Guidelines concerning the provision of information, the parties' opportunity to be heard, the parties' obligations to prepare and conduct themselves appropriately, the trial process, and the avoidance of confusion in explaining the law to *pro se* litigants. The court managed the hearing in a manner that was neutral, that ensured that the *pro se* parties presented the merits of their case, and that elicited the relevant information needed to make an informed and reasoned decision. Based upon the facts of this case, Everett's argument that the Family Court was required to do more is without merit.

(13) Everett contends that the Family Court failed to accommodate Samantha's "anxiety" at the hearing. He cites to no authority suggesting that such a failure constitutes error. Nonetheless, the record demonstrates that, despite the hearsay rules, the Family Court permitted Samantha to read her prepared statement. The court also provided a recess after Samantha read her statement. Consequently, we reject Everett's claim that the Family Court "made little effort" to ease Samantha's anxiety.

(14) Everett next argues that the Family Court permitted the Scotts' attorney to use leading questions without instructing Everett or Samantha to object. "Leading questions should not be used on the direct examination of a witness *except as may be necessary to develop his testimony*."[17] Further, "[t]he rule proscribing leading questions on direct examination is grounded in the principle that the most important peculiarity of the interrogational system is that it may be misused by *suggestive questions* to supply a

---

[17] *Christiana Care Health Servs., Inc. v. Crist*, 956 A.2d 622, 626 (Del. 2008), *as revised* (Aug. 4, 2008) (quoting D.R.E. 611(c)) (emphasis in original) (internal quotation marks omitted).

false memory for the witness—that is, to suggest desired answers not in truth based upon a real recollection."[18] Everett has not demonstrated that the questions suggested false memories for any witness. Even if leading questions were not necessary, they were not so pervasive that they undermined "the fairness and integrity of the trial process."[19] Further, advising Everett to object may have run contrary to the Family Court's obligation to remain impartial.

(15) Everett contends that his concern that Samantha would be present when the Scotts had visitation was not addressed in the Family Court's Order. As part of this contention, he argues that the Scotts' insistence that Samantha attend visitation demonstrates their bad judgment. The Family Court determined, however, that this objection had been obviated by Samantha's estrangement from her father. Indeed, Everett conceded as much at the hearing. As the Family Court suggested in its Order, Everett may seek a condition of no contact prohibiting Samantha from attending the Scotts' visits with C. should the circumstances change.[20] Further, if the Scotts refuse to adhere to Everett's reasonable requests, he may seek the Family Court's assistance.

(16) Everett asserts that the Family Court mentioned the pending TPR in its

---

[18] *Id.* (citation omitted) (internal quotation marks omitted) (emphasis in original).

[19] *Clark*, 47 A.3d at 518 (quoting *Russell*, 5 A.3d at 627).

[20] The Family Court may modify an Order granting third-party visitation at any time, if modification would be in the best interests of the child. *See Samuels*, 2015 WL 6941590, at *2 n.7 (citing 13 *Del. C.* § 2413). We note our understanding of the strong feelings Everett had about the Scotts' refusal to honor his requests that Samantha not be present, especially given the compelling evidence from all parties of the legitimate reasons for that request. That they were not straightforward with, or respectful of, Everett is not a small thing, particularly when the matter bore on the safety and well-being of C. Repetition of behavior of this kind by the Scotts could lead to a different outcome.

Order but did not "explain or address" it.[21]  The Family Court referred to the TPR in its Order as part of its recitation of the facts and ancillary to a discussion of a potential no contact condition that would prevent Samantha from attending the Scotts' visitation with C.[22]  When Everett mentioned the TPR at the hearing, the court discussed it with Everett and Samantha before stating the following:  "So, anyway, that's pending.  Let's leave it at that."  The Family Court even cautioned Everett that TPR petitions are a "very serious form" of litigation and that "most of these actions are filed by attorneys."[23]  Based upon our review of the record, we reject Everett's contentions regarding the failure of the Family Court to explain or address the pending TPR.

(17)  Everett urges that the Family Court's Order was unconstitutional and contrary to Delaware law.  He cites to the United States Supreme Court's decision in *Troxel v. Granville*,[24] and argues that *Troxel* "makes it extremely difficult for a third party to overcome a fit parent's opposition to third party visitation."  Under 13 *Del. C.* § 2412, where a parent objects to visitation, the parent's determination of the child's best interests will prevail unless the nonparent seeking visitation proves that:  (1) visitation is

---

[21] Op. Br. 20 ("The [Family] Court failed to explain or address the issue of the pending [TPR] petition, despite the maternal grandfather's status being dependent upon [Samantha's] parental rights, and the parents being self-represented.").

[22] Fam. Ct. Order at Op. Br. 30 (suggesting that a no contact condition could be placed on the Scotts' visitation, "which would comply with the . . . visitation Order and a possible termination of the parental rights of Samantha").

[23] The Family Court determined the status of the TPR by asking several questions of Everett and Samantha, including whether a social investigation and report had been completed.  *See* A18 (Family Court:  "And, and there is a, a social investigation and report required.  Has that been completed?"  Everett:  "That's the last thing that needs to be completed.  Currently--"  Family Court:  "Well, actually, it's the first thing that needs to be completed."  Everett:  "Oh.  Well, I wasn't aware at the time when I originally filed.").

[24] 530 U.S. 57 (2000).

in the child's best interests; (2) the parent's objections are unreasonable by clear and convincing evidence; and (3) visitation will not substantially interfere with the parent-child relationship by a preponderance of the evidence.[25] Our review of the record reveals that the Family Court was sensitive to the United States Supreme Court's ruling in *Troxel* that, "if a fit parent's decision . . . becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination."[26] For example, during the August 7, 2015 proceedings, the Family Court expressly referred to the *Troxel* decision and observed that "parents have the constitutional right to raise, parent, [and] control the welfare of their children . . . ."

(18)   The Family Court applied Section 2412 to the facts presented at the hearing and found Everett and Samantha's objections to be unreasonable. The court concluded that Everett's concern that Samantha would be present during the Scotts' visitation with C. was obviated due to Samantha's estrangement from Matthew. The Family Court stated that any future problems related to this concern could be resolved by imposing a condition of no contact on the Scotts' visitation. Further, the court addressed Everett and Samantha's objections regarding Matthew's alleged abusive behavior, and concluded that Everett's objection was "totally unreasonable" due to the lack of evidence supporting Samantha's allegations. The Family Court rejected Samantha's objection, but only after considering the lack of evidence supporting her allegations of abuse, in combination with her failure to object to Matthew's visitation with C. until five years into C.'s life. Thus,

---

[25] 13 *Del. C.* § 2412(a).
[26] *Troxel*, 530 U.S. at 70.

10

we are satisfied that the Family Court gave Everett and Samantha's determination of C.'s best interests the "special weight" required by *Troxel*.[27]

(19)   Everett's statutory argument also lacks merit.  In his Reply Brief, Everett argues for the first time that the Family Court's Order did not comply with Section 2412 because the court did not state that Everett and Samantha's objections were unreasonable by clear and convincing evidence.[28]  The trial court's failure to include the phrase "clear and convincing evidence" in its Order is not reversible error, provided that it is apparent from the Opinion in its totality that the court made its findings under the clear and convincing evidence standard.[29]

(20)   Here, the Family Court quoted Section 2412(a)(2)(d) in its Order, including the clear and convincing evidence standard.[30]  The court then held:  "The first question raised by subsection (d) is whether the parent's objections are reasonable.  In this case, the [Family] Court finds the objections of both [Everett] and Samantha . . . to be unreasonable."  The court explained its basis for rejecting these objections by relying on the facts presented at trial and by making credibility determinations.  We are satisfied that the Family Court made its findings under the clear and convincing evidence standard.  Everett's argument that the Order does not comply with Section 2412 is, therefore, without merit.

---

[27] *Id.*

[28] 13 *Del. C.* § 2412(a)(2)(d).

[29] *See Powell v. Dep't of Servs. for Children, Youth & Their Families*, 963 A.2d 724, 738 (Del. 2008), *as corrected* (Dec. 23, 2008) ("Although this particular paragraph in the opinion does not include the phrase 'clear and convincing evidence,' it is apparent from the opinion in its totality that the court made its findings . . . under the clear and convincing evidence standard.").

[30] Fam. Ct. Order at Op. Br. 29 n.2.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is

AFFIRMED.

BY THE COURT:

/s/ *Karen L. Valihura*
Justice