IN THE SUPREME COURT OF THE STATE OF DELAWARE

SAMANTHA PRICE,[1]                  §
                                    § No. 497, 2016
    Respondent Below-          §
    Appellant,                  § Court Below—Family Court
                                    § of the State of Delaware
    v.                          §
                                    § File No. CS09-03588
DIVISION OF FAMILY SERVICES,        § Petition No. 16-15944
                                    §
    Petitioner Below-           §
    Appellee.                   §

Submitted: August 18, 2017
Decided:   October 6, 2017

Before **STRINE**, Chief Justice; **VALIHURA** and **VAUGHN** Justices.

# **O R D E R**

This 6th day of October 2017, upon consideration of the parties' briefs, the supplemental filings,[2] and the record on appeal, it appears to the Court that:

(1)    The respondent-appellant, Samantha Price ("Price"), filed this appeal from the Family Court's order, dated September 27, 2016, terminating her guardianship over her two minor nieces, Xenia (born

---

[1] The Court previously assigned a pseudonym to the appellant under Supreme Court Rule 7(d). The Court also uses pseudonyms for the children throughout this Order.

[2] The appellant did not serve her notice of appeal on the court-appointed special advocate ("CASA"), whom the Family Court appointed under 13 *Del. C.* § 2504(f) to represent the best interests of the children below. Resolution of the appeal was delayed in order for the Court to obtain the CASA's position on appeal.

November 10, 2008), and Marci (born December 4, 2009). We find no error in the Family Court's judgment. Thus, we affirm.

(2) Price is the sister of the girls' mother ("Mother").[3] The Family Court named Price the guardian of Xenia and Marci in August 2009 and December 2009, respectively, due to Mother's substance abuse and mental health issues and the unknown identity of either girl's father. In June 2016, the Division of Family Services ("DFS") received a hotline report about possible physical abuse of the girls by Price. The hotline report also alleged that Price was allowing the girls to stay with Mother while Mother was using drugs and that Mother's housemate may have been sexually inappropriate with the children.

(3) On June 3, 2016, the Family Court entered an emergency *ex parte* order awarding custody of the girls to DFS. The Family Court held a preliminary protective hearing on June 9, 2016 and an adjudicatory hearing on DFS' petition to rescind Price's guardianship on July 7, 2016. Price opposed the petition.

(4) The testimony at the hearing reflected Price had no negative history with DFS regarding the girls before the June 2016 hotline report.

---

[3] Mother was a party to the Family Court proceedings but is not a party to this appeal. She did not dispute that the girls are dependent in her care. Through her counsel, she told the Family Court, at the start of the adjudicatory hearing, that custody of her daughters should be given to the State.

2

After the report, DFS began an investigation that included personal interviews with the girls, one of Price's biological children, a number of people involved in the girls' education, counseling, and home life, and Price herself. Multiple sources stated that the girls had reported being "beat" with an open hand, a ruler or other piece of wood, and a flip-flop. Several interviewees also said they were concerned for the girls' general well-being and adjustment and were worried that Marci was not getting proper nutrition or medical care.

(5) The Family Court found clear and convincing evidence that Price had physically abused the girls, that she did not obtain appropriate medical care for Marci, that she had left the girls in someone else's care for an extended period of time, that the girls were not well adjusted to their home, school, or community while in Price's care, that Price allowed the children to visit Mother despite Mother's drug use, and that there was evidence of domestic violence. After weighing the best interest factors in 13 *Del. C.* § 722, the Family Court concluded that it was in the girls' best interests that Price's guardianship be rescinded and that DFS be granted custody of the girls. This appeal followed.

(6) On appeal, this Court reviews the Family Court's factual and legal determinations as well as its inferences and deductions.[4] We will not disturb the Family Court's rulings on appeal if the court's findings of fact are supported by the record and its explanations, deductions, and inferences are the product of an orderly and logical reasoning process.[5] We review legal rulings *de novo*.[6] If the Family Court correctly applied the law, then our standard of review is abuse of discretion.[7] On issues of witness credibility, we will not substitute our judgment for that of the trier of fact.[8]

(7) In her opening brief, Price argues that the Family Court erred in finding that she had abused the children, that she had neglected Marci's medical issues, and that the children were not well-adjusted in her home. Price also contends that the Family Court erred in accepting the testimony of witnesses whom Price claimed lied and in not appointing counsel to represent her. Price does not argue that the Family Court misapplied or misinterpreted the law.

(8) Under 13 *Del. C.* § 2512(b), the Family Court may award custody of a child to the State only if the parties agree or, after a hearing, the

---

[4] *Long v. Div. of Fam. Servs.*, 41 A.3d 367, 370 (Del. 2012).

[5] *In re Heller*, 669 A.2d 25, 29 (Del. 1995).

[6] *Id.*

[7] *CASA v. Dept. of Servs.*, 834 A.2d 63, 66 (Del. 2003).

[8] *Wife (J. F. V.), v. Husband (O. W. V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).

4

Family Court finds: (i) as to each parent that the child is dependent, neglected, or abused; and (ii) it is in the child's best interest to award custody to the State.[9]  To determine the best interest of the child, the court must consider all relevant factors as outlined in 13 *Del. C.* § 722.

(9)    Under Section 722, the Family Court considers "all relevant factors" including: (1) the wishes of the parents and the child as to his or her custody and residential arrangement; (2) the wishes of the child as to his or her custodian or custodians and residential arrangements; (3) the interaction and interrelationship of the child with his or her parents, grandparents, siblings, persons cohabiting in the relationship of husband and wife with a parent of the child, any other residents of the household or persons who may significantly affect the child's best interests; (4) the child's adjustment to his or her home, school and community; (5) the mental and physical health of all individuals involved; (6) past and present compliance by both parents with their rights and responsibilities to their child under § 701 of this title; (7) evidence of domestic violence as provided for in Chapter 7A of this title; and (8) the criminal history of any party or any other resident of the household including whether the criminal history contains pleas of guilty or

---

[9] 13 *Del. C.* § 2512(b).

no contest or a conviction of a criminal offense.[10] These factors "must be balanced as appropriate for the factual circumstances presented in each case,"[11] and "[i]t is quite possible that the weight of one factor will counterbalance the combined weight of all other factors and be outcome determinative in some situations."[12]

(10) Price argues that the Family Court's factual findings are wrong and do not support the decision to rescind her guardianship. She points to other evidence in the record as specific instances of her care for the children and the children's love for her, but without considering the entirety of the evidence in the record. This Court is not in a position to second guess the Family Court's factual findings unless they are unsupported by the record and were clearly wrong. But here, there is ample evidence in the record to support the court's decision.

(11) Although Price argues that the court erred in finding that she physically abused the children, the Family Court found credible testimony that Price struck one or both children on multiple occasions with her hand, a flip-flop, and some type of piece of wood. The court noted that this credible testimony came from multiple sources including the children themselves, as

---

[10] 13 *Del. C.* § 722(a)(1)-(8).

[11] *Hammond v. Douglas*, 2010 WL 1694792, at *2 (Del. April 28, 2010).

[12] *Fisher v. Fisher*, 691 A.2d 619, 623 (Del. 1997).

6

told to multiple witnesses. The Family Court also pointed out that Price's son confirmed that the girls had received beatings, adding that a belt had been used.

(12) Further, although Price argues that the court erroneously found that she had not obtained appropriate medical care for Marci, the court found that Price had failed to completely address Marci's known medical issues. The court specifically highlighted Marci's distended stomach, urinary incontinence, sleep apnea, and problematic tonsils and adenoids. While Price attempted to justify her actions to the court, explaining that she was deferring care on the medical issues to focus on Marci's behavioral issues, the court found Price's explanation unsatisfactory.

(13) As for Price's contention that the Family Court erroneously found that the girls were not adjusted to their home, school, and community while living with her, the Family Court found that given the physical abuse, inappropriate medical care, and inconsistency of the girls living arrangements, the children were not well adjusted—a conclusion supported by a logical deductive process.

(14) Price also argues that the Family Court erred in relying upon witnesses who lied under oath. Her contention is unsubstantiated. We are highly deferential to the Family Court in assessing the credibility of the

7

witnesses and will not substitute our judgment for that of the trier of fact.[13] This Court has no grounds to reconsider the credibility of witnesses or the weight given to their testimony.

(15) Finally Price argues that the Family Court erred by not appointing counsel to represent her. But, Price never requested the appointment of counsel. We will not address issues for the first time on appeal unless there is plain error.[14] An error is plain when it is "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[15]

(16) In a termination of parental rights proceeding, this Court has noted that a parent's right to counsel at State expense is not automatic.[16] At the very least, a parent is required to appear and to demonstrate their indigence. In this case, Price is not the parent of either child. This Court has never held that a guardian has a right to counsel in a termination of guardianship proceeding. Under the circumstances, we find no plain error in the Family Court's failure, *sua sponte*, to appoint counsel at State expense to represent Price.[17]

---

[13] *Wife (J. F. V.), v. Husband (O. W. V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).

[14] *Clark v. Clark*, 47 A.3d 513, 518 (Del. 2012).

[15] *Id.*

[16] *Brown v. DFS*, 803 A.2d 948, 960 (Del. 2002).

[17] *Id.*

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice