Vanessa R. CLARK, Respondent Below, Appellant,

v.

Scott M. CLARK, Petitioner Below, Appellee.

No. 547, 2011.

Supreme Court of Delaware.

Submitted: April 25, 2012.
Decided: June 28, 2012.

Kathryn J. Laffey, Kelleher & Laffey, Wilmington, Delaware; Ashley B. Gorodetzer, Delaware Volunteer Legal Services, Wilmington, Delaware for appellant.

Michael W. Arrington, Parkowski, Guerke & Swayze, Wilmington, Delaware for appellee.

Before STEELE, Chief Justice, BERGER, and JACOBS, Justices.

STEELE, Chief Justice:

Scott and Vanessa Clark married on July 23, 2003 and had two children. After Father and Mother separated, Mother sought sole custody of the children. The trial judge gave joint custody to Mother and Father. Mother advances three argu-

ments on appeal: (1) joint custody is improper because Father is subject to an order of guardianship, (2) the findings of fact in the best interests of the child analysis were clearly erroneous, and (3) the delayed implementation of the final order constituted error. Although this is a close abuse of discretion case, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

In June 2009, Mother and Father separated. Soon after the separation, Mother moved out of the marital home in New Castle, Delaware. In September 2009, Mother petitioned for orders of Protection from Abuse against Father and paternal grandfather,[1] alleging that Father abused her and that paternal grandfather made inappropriate sexual comments and advances.[2] Mother also cited an incident where grandfather broke into her house and threatened her.[3] Father and paternal grandparents consented to the PFAs without admitting fault and were restricted from contacting Mother.[4] Father petitioned for custody of their two daughters, aged 2 and 6 at the time, in June 2009. In September 2009, Mother petitioned for custody in another county. Through the mediation stage of custody proceedings, Mother and Father agreed to alternate custody every other week.[5]

Friends and family noted that Father had been depressed since the separation.[6] Father attempted suicide by overdosing on medication in September 2009.[7] Mother called an ambulance, which took Father to the hospital. Mother later invited Father to her family's house for Thanksgiving in 2009. When Mother drove Father home, Father leapt from the car while it was traveling at 50 mph, but remarkably did not sustain any serious injuries.

On December 9, 2009, Father attempted to commit suicide for the third time by hanging himself in his garage.[8] Father's friend and grandfather intervened, and an ambulance took Father to the hospital. Father remained in a coma for 10 days and suffered anoxic brain injuries.[9] When Mother visited Father, Father's brother started to assault her until other family members restrained him.[10]

A doctor described Father's physical recovery as "miraculous" and "significant."[11] In the 6 months after the suicide attempt, the doctor believed that Father had recovered 70–80% of his physical capacity.[12] The doctor opined that Father is "for the most part [ ] completely functional" aside from his memory problems.[13] The doctor noted that within 18 months Father was back to playing hockey and was still better than most of his team.[14] Father's mental and emotional recovery, however, has been slower. A therapist described Father's greatest difficulties as his memory, concen-

---

1. Hr'g Tr. 75, June 14, 2011.

2. *Id.* at 128, 171.

3. *Id.* at 180.

4. *Id.* at 128.

5. *Id.* at 75, 105.

6. *Id.* at 13, 123.

7. *Id.* at 76.

8. *Id.* at 131.

9. *Id.* at 36, 37.

10. *Id.* at 79, 155.

11. *Id.* at 36, 37.

12. *Id.* at 37.

13. *Id.* at 38.

14. *Id.* at 42.

tration, and ability to organize.[15] The therapist evaluated Father's recent mental and emotional progress as "slow and steady."[16] Currently, Father participates in full time therapy and rehabilitation.

In January 2010, paternal grandfather and grandmother petitioned the Court of Chancery and became Father's legal guardian.[17] The petition's standard language states that Father is "unable to properly care for his person or property."[18] The physician's affidavit attached to the petition further details that Father has "a disability that interferes with the ability to make or communicate responsible decisions regarding health care, food, clothing, shelter, or the administration of property" and that Father "does not have sufficient mental capacity to understand the nature of a guardianship and cannot consent to the appointment of a guardian."[19] Father's guardianship is still legally in effect and grandfather manages Father's finances. Paternal grandfather and grandmother currently live with Father in the family home.

In November 2010, Mother and Father filed petitions for PFAs against each other for child abuse. Both petitions were denied because of lack of evidence presented by either party.[20] Father alleged that Mother had burned one daughter's eyelid with a cigarette, gave one daughter a chemical burn with a "Mr. Clean Magic Eraser," and physically abused both daughters, leaving scratches and bruises. Mother alleged that Father often would "play bite" the younger daughter and one time he bit her hard enough to bruise and break the skin.[21] Also, Father once pushed the younger daughter into the pool when she could not yet swim, forcing Mother to jump into the pool to rescue the daughter.

Mother moved from her Bear, Delaware apartment into maternal grandmother's Hartly, Delaware residence in 2010. Without consulting Father, Mother enrolled the older daughter in Hartly Elementary School for the 2010–2011 school year, which was a short commute from the maternal grandfather's residence and a 50–60 minute commute to Father's residence.[22]

The Family Court held a custody hearing on June 14, 2011. On June 15, 2011, the Court ordered that another adult must supervise Father when the children are near a pool. On August 22, 2011, the Court issued an order granting joint custody, directing that Father and Mother alternate weekly custody of their daughters for the next year. Starting in August 2012, Mother will obtain primary residence during the week, and Father will have custody every other weekend. Mother will also have final decision making power over the children's extracurricular activities during the school year. If Mother decides to move during this time period, the Court required Mother to move closer to Father's residence or risk losing primary residential custody.

## II. STANDARD OF REVIEW

■ ■ Review of this Family Court decision implicates questions of fact and law. Findings of fact will be upheld unless

15. *Id.* at 13.

16. *Id.* at 32.

17. Resp't Ex. 2.

18. *Id.* at 2, 1.

19. *Id.* at 2, 7.

20. *Id.* at 160.

21. *Id.* at 63.

22. Hr'g Tr. 99–100.

clearly erroneous.[23] This standard requires that the trial judge's factual findings be supported by the record and be the product of an orderly and logical deductive process.[24] Questions of law, including the interpretation of statutes, are reviewed *de novo.* If the Family Court has properly applied the law to the facts, then the standard of review is abuse of discretion.

## III. ANALYSIS

■ Under 13 *Del. C.* § 722, a Family Court judge is required to determine legal custody in accordance with the best interests of the child.[25] The statute enumerates eight factors to guide the trial judge in determining the best interests of the child. The weight given to each factor will be different in any given proceeding, and "[i]t is quite possible that the weight of one factor will counterbalance the combined weight of all other factors and be outcome determinative in some situations."[26] In terms of factual findings based on the credibility of witness testimony, we will not substitute our opinion for that of the trial judge.[27]

**A. Because Mother failed to fairly present her guardianship argument below, this Court cannot consider it on appeal.**

■ Mother argues for adoption of a *per se* rule that prohibits joint custody when one of the parents is legally incompetent and subject to an order of guardianship. Supreme Court Rule 8 states that "[o]nly questions fairly presented to the

trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any questions not so presented."[28] According to her Opening Brief, Mother preserved the issue at A 8–9 and A 52–53.[29] After examining both record citations, we find that the issue was not fairly presented below and therefore not preserved for appeal.

At the first record citation (A 8–9), Father's counsel notified the trial judge that Father suffers from a brain injury and asked that Father's legal guardian be present during Mother's testimony. Mother's counsel counters with the following statement:

> Your Honor, that brings a motion or a point that I intended on raising very early, and that is essentially [Father] is incapable of handling his own affairs. His parents obtained a guardianship with [Mother's] consent in the Court of Chancery, and the petition indicates he's unable to care for himself or his property or his person. And, quite frankly, as long as that guardianship is in place, I don't know how he can present a case, how he can ask to be a decision maker regarding his children. The children, when they visit with him are in his parent's care, and so with respect to the issue of decision making, we have a court order that says [Father] is incompetent.[30]

In response, the trial judge states, "Okay. I understand your position. It

23. *Ross v. Ross,* 992 A.2d 1237 (Del.2010) (ORDER).

24. *Mundy v. Devon,* 906 A.2d 750 (Del.2006).

25. 13 *Del. C.* § 722.

26. *Fisher v. Fisher,* 691 A.2d 619, 623 (Del. 1997) (ORDER).

27. *Banks v. Ashburn,* 959 A.2d 27 (Del.2008) (ORDER).

28. Supr. Ct. R. 8.

29. Opening Br. at 11.

30. App. to Opening Br. at A 8–9.

doesn't go to the question of whether the grandfather can be here."[31] According to Mother, she preserved the issue during Father's motion to allow his guardian to be present during Mother's testimony. The problem, however, is that Mother did not present the issue in a manner that would have fairly afforded Father or the trial judge an opportunity to properly address it. Furthermore, because Mother cites no statutory or common law authority as part of a legal argument, we infer that she did not intend to make a new legal argument during Father's motion. In fact, Mother made only a factual argument addressing one of the best interests of the child factors. The trial judge recognized this problem and expressly ruled that the Mother's comment was irrelevant to the issue at hand—the guardian's presence during Mother's testimony.

Given this contextual framework, we find that Mother did not present at trial the legal question of whether the Family Court should establish a *per se* bar to joint custody where one of the parents is subject to a guardianship order. Neither Father nor the trial judge had the opportunity to squarely address this question in the context of a distinct issue.

Mother also points to her direct examination testimony as evidence that she preserved the issue for appeal.. The following exchange occurred at the end of her direct examination:

Counsel: And are you asking for joint custody or sole custody regarding the decision-making authority?

Mother: Sole custody.

Counsel: And why is that?

Mother: [Father] can't even make decisions for himself.

The Court: I'm sorry?

Mother: [Father] can't even make decisions for himself let alone his children.[32]

This exchange cannot be construed as proposing a new legal rule that an incompetent person should be barred from sharing joint legal custody of a child. Again, the purpose of this testimony was to provide evidentiary support for factor 5 of the best interests of the child test, which requires the trial judge to consider the mental and physical health of all individuals involved. Because this legal question was not fairly presented below, it cannot be raised for the first time on appeal.

■ The text of Rule 8 provides a narrow exception that permits this Court to consider a question for the first time on appeal "when the interests of justice so require."[33] The exception is extremely limited and invokes a plain error standard of review.[34] Plain error requires the error to be "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[35] In *Turner v. State*, this Court considered whether a judge leaving during defendant's closing argument would effectively deprive the defendant of a fair trial.[36] Although in *Turner* the Court found that the judge did not leave before the defendant finished his closing argument,[37] the alleged plain error in *Turner* illustrates how extreme a judge's behavior must be to constitute a "material defect" that prejudices a party's

31. *Id.*

32. App. to Opening Br. at A 52–53.

33. *Russell v. State*, 5 A.3d 622 (Del.2010).

34. *Id.*

35. *Id.* (citing *Wainwright v. State*, 504 A.2d 1096, 1100 (Del.1986)).

36. 5 A.3d 612, 615 (Del.2010).

37. *Id.*

substantial rights.[38]  In this case, the trial judge did not forbid Mother from arguing for a *per se* rule to prohibit parents under a guardianship order from obtaining custody, nor did the trial judge in any other way deprive Mother of a right to present her case.  Mother presented her complete case for sole custody, and the trial judge, in reviewing all of the best interests of the child factors, simply decided that the found facts supported a joint custody order.

**B.  The trial judge's factual findings regarding the best interests of the child are supported by the record.**

■ Under 13 *Del. C.* § 722, the Family Court is required to determine legal custody in accordance with the best interests of the child.[39]  The statute enumerates eight factors to guide the trial judge in determining the child's best interests. Because the trial judge properly applied the best interests of the child test and considered each of the factors, we review the factual findings for clear error.  Specifically, Mother argues that the trial judge's findings relating to factors 1, 4, 5, 7, and 8 are unsupported by the record and not the product of an orderly and logical application of the law to the facts.

Section 722(a)(1) requires a Family Court judge to consider "[t]he wishes of the child's parent or parents as to his or her custody and residential arrangements."[40]  The trial judge found that the Father wishes to maintain joint custody of the children.  Mother argues that Father is legally incompetent and unable to express his wishes.  The record establishes that Father's testimony unambiguously ev-

idences his wishes.  When counsel asks, "Where do you want [your children] to live" Father responds "With me."[41]  We will not substitute our judgment on the credibility of a witness for that of the trial judge.  Therefore, because record evidence supports the trial judge's finding, it is not clearly erroneous.

Section 722(a)(4) requires a Family Court judge to consider "[t]he child's adjustment to his or her home, school and community."[42]  When the children are at Father's home, the grandparents drive the older daughter to school, which takes 50–60 minutes each way.  The Family Court judge found that the commute time will harm the interests of the children as they grow older and changed the primary residence to Mother's home in August 2012, which is 3 minutes from the older daughter's (and presumably, in the future, younger daughter's) school.  Because the concern focused on the children's growing up and having more extracurricular activities at school in the future, it was logical to delay until August 2012 the implementation of the order that the children's residence be near the school.

Section 722(a)(5) requires a Family Court judge to consider "[t]he mental and physical health of all individuals involved."[43]  The trial judge held that this factor carries the most weight and strongly favors Mother due to the seriousness of Father's injuries, which affects his ability to take care of the children.  Mother argues that the trial judge erred by failing to award sole custody based on this factor alone.  Several pieces of evidence in the record, however, demonstrate why the tri-

---

38.  *Norman v. State,* 976 A.2d 843, 869 (Del. 2009).

39.  13 *Del. C.* § 722.

40.  13 *Del. C.* § 722(a)(1).

41.  Hr'g Tr. 59, June 14, 2011.

42.  13 *Del. C.* § 722(a)(4).

43.  13 *Del. C.* § 722(a)(5).

al judge could logically find this factor not dispositive.

Father's medical condition displayed rapid improvement. According to Father's testimony, he takes care of the children when they are with him, including bathing, feeding and reading to them.[44] Father's doctor testified that "for the most part [Father is] completely functional . . . being able to dress himself, feed himself, get in a car, drive to a location, buy food, count money, pay for things, come home."[45] In addition, the trial judge limited Father's decision making authority in two critical areas. Although Mother and Father share joint custody, Mother has sole decision making power regarding extracurricular activities, and where the children reside, during the school year. The trial judge properly found that this factor strongly supports Mother having sole custody, but the trial judge did not abuse her discretion by ordering joint custody.

Section 722(a)(7) requires a Family Court judge to consider "[e]vidence of domestic violence as provided for in Chapter 7A of this title."[46] Chapter 7A defines domestic violence as including but not limited to "physical or sexual abuse or threats of physical or sexual abuse and any other offense against the person committed by one parent against the other parent, against any child living in either parent's home, or against any other adult living in the child's home."[47] Although the trial judge held that this factor favored neither party without further elaboration, evidence in the record suggested that both Mother and Father had engaged in domestic violence. In 2010, Mother and Father each petitioned for PFAs against the other. Father alleged that daughter's upper thigh

was marked with a "Mr. Clean Magic Eraser" that resulted in a chemical burn. A daughter also reported to Father than Mother had burned her right eyelid with her cigarette. On the other hand, Father has bitten the daughter with playful intentions but hard enough to cause bruising. Also, Father is subject to an order that another adult always be present when the children are near a pool, because Father has been known to throw the children in the pool. Because both Mother and Father committed acts of domestic abuse against the children, the trial judge rationally concluded that this factor favored neither party.

Finally, Section 722(a)(8) requires a Family Court judge to consider "[t]he criminal history of any party or any other resident of the household including whether the criminal history contains pleas of guilty or no contest or a conviction of a criminal offense."[48] The trial judge found that this factor favors Mother slightly because of the violation of a PFA order against paternal grandfather when grandfather and Father assaulted Mother's male friend. The trial judge also found Mother's testimony regarding grandfather's sexually inappropriate innuendos and physical actions towards her to be credible. In addition, the trial judge considered the paternal grandfather's 2001 DUI, Father's DELJIS record (criminal contempt of a PFA order), Mother's traffic offenses, and Mother's brother's DELJIS record. The trial judge correctly held that this factor favors Mother slightly, and we agree that this factor carries little weight.

The trial judge properly applied the best interests of the child test and made factual

---

44.  Hr'g Tr. at 52–53.

45.  *Id.* at 38.

46.  13 *Del. C.* § 722(a)(7).

47.  13 *Del. C.* § 703A (a).

48.  13 *Del. C.* § 722(a)(8).

findings supported by the record. Although this is a close abuse of discretion case, we cannot find that the judge acted arbitrarily and capriciously when awarding joint custody despite Father's mental health concerns.

## C. The delayed custody arrangement and condition on Mother's residence are not barred by statute.

■ Mother argues that the trial judge improperly delayed her award of primary residence until August 2012. For support, she cites 13 *Del. C.* § 727(b) which states that any custody order *may* include a provision "granting temporary joint or sole custody for a period of time not to exceed 6 months in duration" for the express purpose of allowing the parents to demonstrate "their ability and willingness to cooperate with the custodial arrangement."[49] This provision does not require the trial judge to finalize implementation within 6 months of the order; rather, it limits the length of a temporary grant of custody. In this case, the trial judge did not order a temporary grant of custody. Rather, Mother and Father merely maintain their current custody arrangement until August 2012.

The trial judge cited three reasons in support of the delayed implementation of the order. First, the delay gives Father more time to continue making progress in his recovery. Second, the delay avoids any changes for the girls during the next year. The trial judge specifically found that the children appear to be doing reasonably well, despite spending a lot of time in the car. Third, the delay gives Mother time to complete her schooling in Spring 2012 and obtain housing closer to the mari-

tal residence if she moves out of her mother's home. Given these reasons, we cannot find that the trial judge abused her discretion by delaying implementation.

■ Mother's final argument on appeal is that the trial judge placed improper restrictions on her ability to move by subjecting her decision making power over primary residence to the condition of not moving farther away from the marital residence. For support, Mother cites 13 *Del. C.* § 727(a), which states that a Family Court judge shall not restrict the rights of a parent unless she finds that "the exercise of such rights would endanger a child's physical health or significantly impair his or her emotional development."[50] This provision, however, provides no statutory support for Mother's position because it addresses a parent's right to receive information about and correspond with the child. It does not address the parent's right to custody.

Father contends that the trial judge's language about where Mother can move implies that the distance between Father and Mother is important to the children.[51] The trial judge explicitly stated that Mother moving farther away would be a valid reason to reevaluate Mother's sole decision making authority regarding primary residence. Under 13 *Del. C.* § 729(c), a custody order can only be modified in the first 2 years after being issued if a child's physical health is in danger or if his emotional development is significantly impaired.[52] Because the trial judge potentially allowed a modification within the first 2 years, we may infer that the trial judge considered that if Mother moved farther away, that would significantly impair the children's emotional development. We defer to the

49. 13 *Del. C.* § 727(b).

50. 13 *Del. C.* § 727(a).

51. Answering Br. at 28.

52. 13 *Del. C.* § 729(c).

trial judge's evaluation. Thus, the issue of where Mother can move is not an absolute restriction on her freedom, but merely notice to Mother of the importance of the children being in close proximity to Father. Mother has no statutory support for her claim. The trial judge did not err by conditioning Mother's sole decision making power over the children's primary residence on whether she moved farther away from the marital residence.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the Family Court trial judge is affirmed.