IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| NANCY WARD,[1] | § | |
| | § | No. 190, 2023 |
| Respondent Below, | § | |
| Appellant, | § | Court Below–Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. CK14-02518 |
| DAVID TAYLOR, | § | Petition Nos. 23-06777 |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: October 20, 2023
Decided: January 5, 2024

Before **SEITZ**; Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## ORDER

After consideration of the appellant's opening brief and the record on appeal,[2] it appears to the Court that:

(1)    The appellant, Nancy Ward ("Mother"), filed this appeal from the Family Court's protection-from-abuse ("PFA") order dated May 2, 2023.  We find no error or abuse of discretion in the Family Court's decision.  Accordingly, we affirm the Family Court's judgment.

(2)    Mother and the appellee, David Taylor ("Father"), are the parents of a girl, born in September 2012 (the "Child").  The record reflects that the parties

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

[2] The appellee did not file an answering brief.

convened for an emergency custody hearing in March 2023, with Mother—who lives in Tempe, Arizona with the Child—appearing remotely. Following the hearing, the Family Court granted temporary custody of the Child to Father. In April 2023, Father filed a petition for an emergency *ex parte* PFA order on behalf of the Child, alleging that (i) Mother has refused to answer his phone calls and text messages since the custody hearing; (ii) the Tempe police department attempted to conduct a welfare check on the Child at Father's request, but Mother did not answer the door; and (iii) Mother had un-enrolled the Child from school immediately following the March custody hearing. On April 5, 2023, the Family Court granted the petition and scheduled a hearing on the merits of the petition for April 18, 2023. On April 18, 2023, the Family Court extended the temporary PFA order and rescheduled the hearing for May 2, 2023. The Family Court docket reflects that Mother was electronically served with the summons, notice, *ex parte* order, and PFA petition at her email address on file with the Family Court on April 18, 2023.

(3)     On April 20, Mother filed a request to participate remotely at the May 2 hearing, which the Family Court denied. On April 25, Mother filed an answer to the PFA petition, denying Father's allegations and arguing lack of jurisdiction and improper service. Mother failed to appear at the May 2 hearing. After taking testimony from Father, the Family Court granted the PFA petition and awarded temporary custody of the Child to Father. In so doing, the court found that the Child

2

was at risk because Mother appeared to be hiding from authorities and was in "flight mode." Mother then moved to reopen the case to allow her to participate remotely. The Family Court denied Mother's motion, noting that when Mother appeared remotely for the custody hearing, she refused to answer questions put to her by the court and terminated her participation in the hearing without leave of court. Mother appeals.

(4) Our review of a decision of the Family Court extends to a review of the facts and law, as well as inferences and deductions made by the trial judge.[3] Our duty is to review the sufficiency of the evidence and to test the propriety of the findings.[4] Findings of fact will not be disturbed on appeal unless they are clearly erroneous.[5] We will not substitute our opinion for the inferences and deductions of the trial judge if they are supported by the record.[6] If the Family Court correctly applied the law to the facts, we review its decision for abuse of discretion.[7] To obtain a PFA order, a petitioner must establish by a preponderance of the evidence that the respondent has committed an act of domestic violence.[8]

---

[3] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Clark v. Clark*, 47 A.3d 513, 517 (Del. 2012).
[8] *Stuart v. Stuart*, 2017 WL 1090543, at *1 (Del. Mar. 22, 2017).

(5) On appeal, Mother's arguments may be fairly summarized as follows: (i) the Family Court lacked jurisdiction to hear the PFA petition; (ii) insufficiency of service; and (iii) the evidence presented did not support a finding of abuse. Mother's first two claims are premised on the fact that she has lived in Arizona since January 2019. Mother's arguments are unavailing.

(6) First, it is evident that the Family Court has "exclusive, continuing jurisdiction" over child-custody proceedings under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") after it makes an initial custody determination, unless and until "neither the child, nor the child and one parent, nor the child and a person acting as a parent" has a significant connection with Delaware.[9] Here, the Family Court made an initial custody determination when it entered the parties' custody consent agreement as an order of the court on April 24, 2018, and the parties do not dispute that Father continues to reside in Delaware. A "child-custody proceeding" includes "a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights and *protection from domestic violence*, in which the issue [of custody or visitation] may appear."[10] Because Father's PFA petition placed Mother's custody at issue (and, in

---

[9] 13 *Del. C.* § 1921(a).
[10] 13 *Del. C.* § 1902(4) (emphasis added).

4

fact, resulted in an order awarding temporary custody of the Child to Father), the court's authority to enter the PFA order was clearly established.[11]

(7) Second, we find that service was sufficient under 10 *Del. C.* § 3104(e). Although the notice of the PFA hearing sent to Mother's last known address was returned unclaimed, the court sent notice of the PFA hearing to Mother (who had also been actively participating in related child-custody proceedings in the Family Court) at her confirmed email address, and Mother filed a timely motion to participate remotely in the May 2, 2023 PFA hearing. Under the circumstances, there was "other evidence of personal delivery to the addressee satisfactory to the court."[12]

(8) Third, there was sufficient evidence to support the Family Court's finding that Mother had engaged in domestic violence. The definition of "abuse" includes "[e]gaging in a course of alarming or distressing conduct in a manner which is likely to cause fear or emotional distress…."[13] Father testified that (i) local police were unable to make contact with the Child to conduct a wellness check, (ii) Mother appeared to be "hotel hopping," and (iii) Mother had un-enrolled the Child, who was

---

[11] *See B.T.W. ex. rel. T.L. v. P.J.L.*, 956 A.2d 1014, 1016 (Pa. Super. Ct. Aug. 27, 2008) (finding that the Pennsylvania court had jurisdiction under the UCCJEA to enter a PFA order when the PFA petition was filed against an out-of-state resident for conduct that occurred out of state).

[12] 10 *Del. C.* § 3104(e).

[13] 10 *Del. C.* § 1041(1)(d). The definition of "domestic violence" includes abuse committed by one family member against another. *Id.* § 1041(2).

5

ten years old at the time, from school.[14]  This testimony was sufficient to support a finding that Mother was engaging in a course of conduct likely to cause distress to the Child.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court be AFFIRMED.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice

---

[14] On appeal, Mother has submitted a report card that was not introduced below.  Because it is not part of the record on appeal, we cannot consider it.  We note, however, that its contents do not help Mother's cause; to the contrary, the report card reflects that the Child was failing several subjects when Mother pulled the Child from school.