IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JAN BURK,[1] | § | |
| | § | No. 94, 2024 |
| Respondent Below, | § | |
| Appellant, | § | Court Below–Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. CN22-05138 |
| RICHARD KURTIS and SARAH | § | Petition No. 22-22504 |
| KURTIS, | § | |
| | § | |
| Petitioners Below, | § | |
| Appellees. | § | |

Submitted: January 10, 2025
Decided: March 24, 2025

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## ORDER

After consideration of the parties' briefs and the Family Court record, it appears to the Court that:

(1) The appellant, Jan Burk ("Mother"), is the mother of a girl, born in July 2015 (the "Child"). Mother and the Child's father ("Father") married in 2013, separated in March 2019, and divorced in January 2021. Father died by apparent suicide in March 2022. In October 2022, Father's parents, the appellees, Sarah Kurtis ("Paternal Grandmother") and Richard Kurtis ("Paternal Grandfather" and, together

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

with Paternal Grandmother, "Paternal Grandparents"), petitioned the Family Court for third-party visitation with the Child (the "Petition"). Mother opposed the Petition.

(2) The Family Court held a hearing on the Petition over two days on October 19, 2023, and January 2, 2024. In support of the Petition, Paternal Grandparents presented evidence of the close relationship they had with the Child before Mother terminated their access to the Child in December 2019. Specifically, the evidence showed that Mother, Father, and the Child had resided with Paternal Grandparents at their home in New Jersey for approximately two-and-one-half years after the Child's birth. And, after Mother, Father, and the Child moved out of Paternal Grandparents' home and into a nearby condominium, the parties continued to enjoy a good relationship (even after Mother and Father separated), with the Child spending several days at Paternal Grandparents' home every other weekend.

(3) On October 31, 2019, Father, who suffered from mental health disorders and substance abuse, set fire to the condominium where he had continued to reside following his separation from Mother. Thereafter, Father entered a residential mental health treatment program, where he remained until he was discharged in January 2020. At some point while Father was hospitalized, Mother obtained a temporary restraining order prohibiting Father from contacting Mother or

the Child.[2] However, Mother continued to communicate regularly with Paternal Grandparents, who continued to see the Child frequently until late December 2019 when Mother—for reasons unknown to Paternal Grandparents—stopped responding to Paternal Grandparents' text messages and emails. Nevertheless, Paternal Grandparents continued to text and email Mother, asking to see the Child. Paternal Grandparents also mailed letters to the Child with the hope that Mother would read them to her.

(4)     In opposition to the Petition, Mother argued that Paternal Grandparents had enabled or excused some of Father's more troubling behaviors. Mother alleged that Father had—with Paternal Grandparents' knowledge—forced the Child to eat live insects and raw meat, dissected live animals in front of the Child, and assaulted Mother. Paternal Grandfather acknowledged that he was aware that Father had suggested to the Child that she eat live insects and raw meat and that he considered the suggestion unorthodox. Similarly, he admitted to hearing that Father had dissected a live turtle in front of the Child. But Paternal Grandfather observed that these activities did not take place in Paternal Grandparents' home and noted that, as a grandparent, he deferred to Father's parenting decisions. For her part, Mother admitted that these incidents took place at the condominium where Mother, Father,

_____

[2] A permanent restraining order was entered on September 30, 2020.

3

and the Child were living as a family and that these incidents did not cause her to leave the marriage. With regard to Mother's allegation that Paternal Grandparents had declined to intervene on her behalf when she told them that Father had assaulted her, they vehemently denied having any such knowledge. Finally, the evidence showed that (i) following her separation from Father in March 2019, Mother and the Child lived with Mother's parents at their home in New Jersey until Mother and the Child relocated to Delaware with Mother's boyfriend, and (ii) the Child had not seen her maternal grandparents since the summer of 2021.

(5)     By way of written order issued on February 6, 2024, the Family Court granted Paternal Grandparents' petition (the "Order"). Applying the test for third-party visitation set forth in 13 *Del. C.* § 2412, the Family Court found that Mother objected to the Petition, but that Paternal Grandparents had (i) established, by clear and convincing evidence, that her objection was unreasonable, and (ii) demonstrated, by a preponderance of the evidence, that granting the Petition would not substantially interfere with the parent/child relationship.[3] The court then considered the best-interest factors set forth in 13 *Del. C.* § 722(a), and concluded that granting the Petition was in the Child's best interest.[4] Mother appeals.

---

[3] 13 *Del. C.* § 2412(a).

[4] *Id.* § 2412(b).

4

(6) Our review of a decision of the Family Court extends to a review of the facts and law, as well as inferences and deductions made by the trial judge.[5] Our duty is to review the sufficiency of the evidence and to test the propriety of the trial court's findings.[6] Findings of fact will not be disturbed on appeal unless they are clearly erroneous.[7] If the Family Court correctly applied the law to the facts, we review its decision for abuse of discretion.[8] "When the determination of facts turns on a question of the credibility and the acceptance or rejection of the testimony of witnesses appearing before the trier of fact, we will not substitute our opinion for that of the trier of fact."[9]

(7) On appeal, Mother's arguments may be fairly summarized as follows: (i) the Family Court did not have jurisdiction over the Petition because she and the Child moved to Maryland while the Petition was pending; (ii) Paternal Grandparents downplayed the seriousness of Father's mental illness to her and the Child's detriment; (iii) the Order improperly referred to evidence outside the record regarding Mother's mental health; (iv) the Family Court made improper findings about Mother's relationship with her parents; and (v) the Family Court erred when

---

[5] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).

[6] *Id.*

[7] *Id.*

[8] *Clark v. Clark*, 47 A.3d 513, 517 (Del. 2012).

[9] *Shimel v. Shimel*, 2019 WL 2142066, at *2 (Del. May 14, 2019).

it denied Mother's motion to interview the Child. None of these arguments merit reversal.

(8)    First, although the Order incorrectly states that Mother was living in Delaware at the time of the April 19, 2023 case management conference, the Family Court nevertheless had jurisdiction over the Petition because Mother and the Child were living in Delaware when the Petition was filed.[10] Moreover, and contrary to Mother's claim on appeal that she "strongly" objected to Delaware having jurisdiction over the Petition, the parties *agreed* at the case management conference that Delaware was the proper venue for the limited purpose of deciding the Petition.[11]

(9)    We construe Mother's argument that Paternal Grandparents allegedly failed to protect Mother and the Child from the seriousness of Father's mental health diagnoses as an argument that the Family Court erred when it found that Paternal Grandparents had established that Mother's objection to the Petition was

---

[10] *See* 13 *Del. C.* § 1920(a) (providing that Delaware has jurisdiction to hear custody matters when another state does not have jurisdiction and the child and at least one parent have significant connections to Delaware). Because Mother and the Child were no longer living in New Jersey when the Petition was filed, New Jersey was not an appropriate venue for third-party-visitation proceedings.

[11] *See Beeks v. State*, 2015 WL 7756858, at *3 (Del. Dec. 1, 2015) ("[A] conscious decision to refrain from objecting at trial as a tactical matter constitutes a waiver that precludes plain error review on direct appeal."). As the Family Court noted, because Mother and the Child have moved to Maryland, any future petitions regarding custody of or visitation with the Child will need to be filed in Maryland.

unreasonable. As the trier of fact, the Family Court was responsible for making credibility determinations. The court—giving significant weight to the evidence that showed that Mother continued to have a positive relationship with Paternal Grandparents following Father's psychotic episode and hospitalization in the fall of 2019 as well as the fact that Father was no longer able to pose a threat to the Child—concluded that Mother's claim that Paternal Grandparents posed a threat to the Child was not credible. We will not set aside this credibility determination on appeal.

(10) Mother also complains that the Order improperly refers to evidence introduced before the same Family Court judge in unrelated proceedings. The record reflects that Paternal Grandparents' legal counsel attempted to elicit testimony from Mother regarding a petition for a protection-from-abuse ("PFA") order that she had filed against her father, which was, apparently, denied. Mother's counsel objected to the relevance of the PFA proceedings, and the Family Court sustained counsel's objection. In the Order, however, the Family Court took judicial notice of Mother's testimony in the PFA proceedings, the Family Court commissioner's findings at the conclusion of Mother's testimony, and the Family Court's decision affirming the commissioner's findings. Assuming without deciding that the Family Court erred when it took judicial notice of the unrelated PFA proceedings after it had sustained Mother's objection to the relevancy of those proceedings, the Family Court's error

does not warrant reversal because the court correctly applied the test for third-party visitation to the facts before it.

(11) Mother next argues that the Family Court makes "false and highly offensive" statements about Mother's relationship with her parents and that there is no evidence that her current fiancé is to blame for Mother's estrangement from her parents. In its discussion of the best-interest factors, the Family Court pondered whether Mother's objection to the Petition might be relevant to factor 5 (the mental and physical health of the parties) because it seemed that Mother began to isolate herself from others around the time that she began dating her fiancé. *But* the Family Court dismissed the relevance of that theory because there was "no evidence" to support a finding that Mother was emotionally vulnerable. In this context, the Family Court's musings do not constitute reversable error.

(12) Finally, Mother argues that the Family Court erred when it denied her request that the court interview the Child. The decision to interview a child to ascertain her wishes lies within the sole discretion of the Family Court.[12] The Family Court did not abuse its discretion here—the Child, who was only eight years old at the time of the hearing on the Petition, had not seen Paternal Grandparents for years and was unlikely to be able to contribute in a meaningful way to the court's third-

---

[12] *Price v. Div. of Family Servs.*, 2022 WL 10861025, at *3 (Del. Oct. 18, 2022).

8

party-visitation analysis. To the extent that Mother has concerns about the Child's sudden reintroduction to Paternal Grandparents, the Family Court acknowledged that a transitional period of supervised visitation would be appropriate.

(13) Having carefully reviewed the parties' positions and the record on appeal, we find no error or abuse of discretion in the Family Court's ruling. The Family Court correctly applied the law to the facts before it when it determined that Paternal Grandparents satisfied the standard for third-party visitation under 13 *Del. C.* § 2412. We therefore affirm.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court be AFFIRMED.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice

9