IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JAMES P. O'DEA,[1] | § | |
| | § | No. 386, 2024 |
| Respondent Below, | § | |
| Appellant, | § | Court Below: Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. CS22-04078 |
| ROSE DOWNS, | § | Petition No. 22-07695 |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: April 23, 2025
Decided: May 2, 2025

Before **SEITZ**, Chief Justice; **TRAYNOR** and **GRIFFITHS**, Justices.

## <u>**ORDER**</u>

The Court, having considered the briefs and record on appeal, rules as follows:

(1)     This appeal arises from a Family Court property division ancillary to divorce.  Before the final property settlement hearing, Husband made several payments to Wife from two retirement accounts totaling $150,000.  At the ancillary hearing, the Husband testified that the $150,000 payments from Husband represented Wife's marital share of two of Husband's retirement accounts.  In a final ancillary order, the court awarded Wife 50% of the marital assets and liabilities, including 50% of Husband's two retirement accounts valued at $236,363.  At a 50%

---

[1] The Court previously assigned pseudonyms to the parties pursuant to Supreme Court Rule 7(d).

division, Wife was entitled to receive $118,181.50 from Husband's two retirement accounts. Husband's $150,000 payments from the two accounts overpaid Wife $31,818.50.

(2)    On a motion for rehearing, the court refused to credit Husband with the overpayment. It relied on Husband's testimony at the ancillary hearing that the $150,000 payments represented Wife's marital share of Husband's two retirement accounts. If Husband wanted a credit for the overpayment, the court held, he should have reserved the right to do so during the ancillary proceedings. The court also held that Husband improperly raised the argument for the first time in a motion for reargument. Husband has appealed from the denial of his motion for reargument. For the reasons that follow, we affirm the Family Court's judgment.

(3)    The Family Court entered a final decree of divorce on June 6, 2022, and retained jurisdiction over ancillary matters.[2] On April 13, 2022, the court entered the parties' Interim Stipulation, Agreement, and Order ("Interim Order").[3] In the Interim Order, in a section entitled Access to Marital Funds, the parties agreed that "Husband has various accounts (bank, investment, etc.) solely in his possession and control."[4] The funds in those accounts "are believed to at least to some degree have

---

[2] App. to Appellant's Opening Br. at A-13 (Final Ord. at 2) [hereinafter A-__].

[3] *See* A-8–11 (Interim Ord.).

[4] A-9 (Interim Ord. ¶ 4).

a marital component[,]" and Husband agreed to transfer to Wife on agreed dates an amount totaling $150,000.[5] At the time, Husband did not designate the source of the $150,000 payment from Husband's assets.[6]

(4) Before the ancillary hearing, the parties submitted a final ancillary pretrial stipulation ("Pretrial Stipulation"), which was entered by the court at the start of the June 13, 2023 ancillary hearing.[7] Regarding Husband's two retirement accounts, the Pretrial Stipulation stated that the $150,000 paid to Wife should be attributed to her in the division of marital property.[8] Husband was assigned the funds in the two retirement accounts.[9]

(5) On May 30, 2024, the Family Court issued a final order resolving the ancillary proceedings ("Final Order").[10] The court decided that the assets and debts should be divided equally and ordered Husband to pay Wife $102,176.39 to achieve

---

[5] A-9–10 (Interim Ord. ¶ 4).

[6] *Id.*

[7] *See* A-63–79 (Pretrial Stipulation).

[8] A-65 (Pretrial Stipulation at 3).

[9] The first retirement account, called the Stifel retirement account, had a $42,500 assigned marital value. *Id.* The second retirement account, called the UPS retirement account, had a $193,863 assigned marital value. *Id.* The UPS retirement account is also referred to as the Prudential retirement account. A-35 (Final Ord. at 24).

[10] *See* A-12–56 (Final Ord.).

3

equal division.[11]   Regarding the retirement accounts, the court first noted the following from the Interim Order:

> Pursuant to the parties' Ancillary Pretrial Stipulation, the parties agreed that pursuant to their April 13, 2022, Interim Separation Agreement, Husband transferred to Wife $150,000.00. The parties further agreed that Wife is to be attributed with the value of these funds in the Wright chart.[12]

(6)   Next, the court found that, based on Husband's testimony at the ancillary hearing, Husband had paid Wife her marital share of the two retirement accounts:

> Within their Ancillary Pretrial Stipulation, the parties agreed that the marital portion of Husband's Prudential retirement account and Stifel retirement account should be divided. **However, at the parties' Ancillary Hearing, Husband expressed his position that Wife already received her share of these assets when he paid her $150,000.00, pursuant to the parties' April 13, 2022, Interim Separation Agreement.** Specifically, Husband testified that he took $75,000.00 from his Prudential retirement account and $75,000 from his Stifel retirement account in order to pay Wife the $150,000.00 that he owed her under the interim Separation Agreement.[13]

(7)   Thus, for the following reasons, the court refused to credit Husband for the overpayment:

> Based on the foregoing, it does not appear that these assets are actually in dispute, since Wife received her portion of the same when

---

[11] A-35 (Final Ord. at 24).  Husband had requested a 60/40 division in his favor, while Wife had requested a 55/45 division in her favor.  A-34 (Final Ord. at 23).

[12] A-32 (Final Ord. at 21).

[13] A-36 (Final Ord. at 25) (emphasis added).

Husband paid her $150,000.00 in accordance with the parties' April 13, 2022, Interim Separation Agreement. The Court recognized that Wife's portion of Husband's Prudential retirement account and Stifel retirement account totals $118,181.50. Thus, it appears that Husband has actually overpaid Wife in the amount of $31,818.50. However, Husband has not requested that he be given credit for overpayment to Wife, or that he be reimbursed in the amount of $31,818.50. As such the Court shall not order a distribution with respect to Husband's Prudential retirement account or Stifel retirement account.[14]

(8) In the Final Order, the court attributed no value to each of Husband's two retirement accounts.[15] Husband filed a motion for reargument and claimed, in part, that the court erred by not crediting the overpayment to Husband.[16] According to Husband, "[t]he $150,000 that Wife received was to go in her column of the Ancillary Pretrial Stipulation rather than to be considered a division of Husband's two (2) retirement account[s]."[17] Husband also argued that he should receive a credit for the tax liability he incurred when he withdrew $150,000 from the two retirement accounts.[18] Although the court granted the motion regarding the tax liability, it denied the motion to reargue the credit issue, reasoning once again that:

Within its Order of May 30, 2024, the Court determined that Wife received her portion of Husband's Prudential retirement account and Stifel retirement account, when Husband paid her $150,000 in

---

[14] A-37 (Final Ord. at 26).

[15] A-57 (*Wright* Chart, Attach. to the Final Ord.).

[16] A-60–61 (Appellant's Mot. Rearg. ¶¶ 7–8).

[17] A-60 (Appellant's Mot. Rearg. ¶ 4).

[18] A-60–61 (Appellant's Mot. Rearg. ¶ 8).

accordance with the parties' April 13, 2022 Interim Separation Agreement. The Court also recognized that Wife's portion of Husband's Prudential retirement account and Stifel retirement account totaled $118,181.50. Thus, Husband overpaid Wife in the amount of $31,818.50. However, as the Court stated in its May 30th Order, throughout the span of the parties' ancillary litigation, Husband never requested that he be given a credit for overpaying Wife, or that he be reimbursed in the amount of $31,818.50. As stated above, the Court will not grant reargument when one party attempts to submit evidence which could have been but was not introduced at trial.[19]

(9) On appeal, Husband argues that the Family Court erred as a matter of law and abused its discretion by denying Husband an overpayment credit and denying his motion for reargument.[20] Husband claims that (1) the Pretrial Stipulation addressed the overpayment question; (2) the court was required by statute to equitably divide the parties' property; and (3) it was impossible for Husband to know that an overpayment had occurred until the court issued its Final Order.[21] Wife counters that, although the Pretrial Stipulation allocated the $150,000 payments to Wife as marital property, Husband testified at the hearing that the payments were from Husband's two retirement accounts and represented Wife's marital share from those accounts.[22] Wife contends that Husband never reserved the

---

[19] A-120–21 (Ord. on Mots. Rearg. at 5–6).

[20] Appellant's Opening Br. at 3–4.

[21] *Id.*

[22] Appellee's Answering Br. at 5–6, 9 [hereinafter Answering Br.].

6

right to seek a credit for any overpayment once the court set the property division percentage.[23] We review the denial of a motion for reargument for abuse of discretion,[24] factual findings for clear error,[25] and legal conclusions *de novo*.[26]

(10) We affirm the Family Court's judgment. Based on Husband's testimony, the court found as a factual matter during the ancillary hearing that "Husband expressed his position that Wife already received her share of [the retirement accounts] when he paid her $150,000.00, pursuant to the parties' April 13, 2022 Interim Separation Agreement."[27] Husband does not dispute this testimony on appeal. He also did not file a reply brief challenging Wife's arguments that (1) Husband testified that he considered "the $150,000.00 as payment for Downs' share of the retirement accounts;"[28] (2) "[f]rom the Court's perspective, once the distribution of the retirement accounts was completed by the tendering of $150,000.00, the retirement accounts were no longer subject to the property division of 50/50 and therefore not included in the $102,176.39 equalization payment;"[29] and

---

[23] *Id.* at 12–13.

[24] *Jones v. Lang*, 591 A.2d 185, 186 (Del. 1991) (citations omitted).

[25] *Clark v. Clark*, 47 A.3d 513, 516–17 (Del. 2012) (citation omitted).

[26] *Id.* at 517.

[27] A-36 (Final Ord. at 25).

[28] Answering Br. at 9.

[29] *Id.* at 12.

(3) Husband could have expressly preserved the right in the pre-trial stipulation or at trial to apply the final property division percentage to the two retirement accounts.[30] Thus, we have no basis to say that the Family Court clearly erred by relying on Husband's testimony at the hearing in denying the motion for reargument.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Chief Justice

---

[30] *Id.*; *see also* A-37 (Final Ord. at 26).