IN THE SUPREME COURT OF THE STATE OF DELAWARE

BENNETT VINCENT,[1]      §
     § No. 346, 2025
       Respondent Below,      §
       Appellant,      § Court Below–Family Court
     § of the State of Delaware
       v.      §
     § File No. CN24-05194
EDEN MICHAELS,      § Petition No. 24-23335
     §
       Petitioner Below,      §
       Appellee.      §

Submitted: February 13, 2026
Decided: May 6, 2026

Before **SEITZ**, Chief Justice; **LEGROW** and **GRIFFITHS**, Justices.

## ORDER

After consideration of the appellant's opening brief and the Family Court record, it appears to the Court that:

(1) Bennett Vincent appeals the Family Court's order affirming a commissioner's order granting the appellee's petition for a protection-from-abuse ("PFA") order. We find no error or abuse of discretion in the Family Court's decision and therefore affirm.

(2) Vincent and the appellee, Eden Michaels, were married in 2019 and share a child together—a girl, born in November 2020 (the "Child"). On October 4,

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

2024, Michaels, proceeding *pro se*, petitioned for a PFA order and moved for an emergency *ex parte* PFA order, alleging that Vincent had choked her in the Child's presence on three occasions—once in August 2023 and twice in March 2024. A Family Court commissioner granted Michaels' motion for an emergency *ex parte* PFA order later that day. On October 9, Michaels, with the assistance of counsel, filed an amended PFA petition, clarifying the dates on which the alleged abuse occurred—August 2023, mid-March 2024, mid-April 2024, October 3, 2024, and October 9, 2024. On October 31, Vincent filed a cross-petition for a PFA order.

(3) A Family Court commissioner held a hearing on the parties' cross-PFA petitions over three days in early 2025. The commissioner heard testimony from one of Michaels' close friends, a mutual friend of the parties, Vincent's father, two officers from the New Castle County Police Department, and the parties. Relevant here, Michaels testified about an August 2023 incident that happened at a hotel in upstate New York while the family was on a road trip. After the family finished dinner at a nearby restaurant, Vincent drove them back to their hotel. As he did so, he started a video recording of Michaels and the Child, who were giggling in the backseat. The video, which was admitted into evidence, also showed Vincent speeding through the hotel parking lot and appearing to sideswipe a pedestrian. After the near-miss with the pedestrian, Michaels can be heard repeatedly asking Vincent to slow down until Vincent parks the car and ends the recording. Vincent

2

and Michaels continued to argue as the family made their way back to their hotel room. Once in the hotel room, Vincent "came at" Michaels, and she slapped him on his cheek with an open palm.[2] Michaels testified that Vincent "immediately grabbed [her] wrists and threw [her] on the bed, and hopped on top of [her], and sat on her torso, like, halfway up so [she] legitimately could barely breathe."[3] With what breath she had, Michaels screamed for help. Vincent held Micheals in this position for at least five minutes and at one point told Michaels that he would not let her go "until somebody heard [her] scream."[4] Eventually, Vincent released Michaels and retreated into the bathroom.

(4) Vincent acknowledged that he had held Michaels down but argued that he had done so to prevent Michaels from attacking him. The Family Court admitted into evidence three video recordings that Vincent took in the aftermath of the alleged assault without Michaels' knowledge. In the recordings, which total over twelve minutes in length, Michaels emotionally and repeatedly described being "scared" because of Vincent's "out of control" driving in the parking lot. Vincent can be heard acknowledging that "of course" he "restrained" Michaels because, he claimed, she was hitting him, at which point she clarified, "I slapped you *once* and walked

---

[2] App. to Opening Br. at A0289-A0291.

[3] *Id.* at A0291.

[4] *Id.* at A0293-A0294.

away." Vincent did not disagree and confirmed that he told her that he would not release her until someone heard her scream.

(5) By way of order dated March 18, 2025, the commissioner granted Michaels' PFA petition on the basis of the August 2023 incident described above and granted Vincent's PFA petition on the basis of an April 2023 incident. The Family Court commissioner made the following findings regarding Michaels' PFA petition:

> The [c]ourt find that [Michaels] proved by a preponderance of the evidence that [Vincent] committed an act of abuse against her in August 2023. Specifically, the [c]ourt finds that [Vincent] committed an act of abuse as defined in 10 *Del. C.* § 1041(1)(d) and (i). The [c]ourt finds that [Vincent] engaged in a course of alarming or distressing conduct when he caused fear in [Michaels] by his driving of the vehicle. [Michaels] asked him multiple times to slow down, and her wishes were ignored. While [Vincent] claims it was because of him seeing a "disheveled" man, it was clear to the [c]ourt that [Vincent] engaged in a course of conduct that caused [Michaels] fear. The [c]ourt also finds that [Vincent's] conduct was conduct which a reasonable person, under the circumstances, would find threatening or harmful. The argument continued into the hotel room and resulted in [Vincent] restraining [Michaels]. [Vincent] claims his restraint of [Michaels] was to stop her from attacking him. During his testimony, he admitted to saying to [Michaels], while [Michaels] was screaming and telling him the cops were going to come, that he hoped someone did show up because they would see what was going on. This caused [Michaels] to feel scared and under the circumstances, this [c]ourt finds that a reasonable person would find this threatening or harmful.[5]

---

[5] *Id.* at A1217-18 (citations omitted).

4

Vincent and Michaels each filed timely requests for a review of the commissioner's order. By way of order dated August 7, 2025, a Family Court judge affirmed the commissioner's PFA orders. Vincent appealed to this Court.

(6) When a party files timely request for review of a commissioner's order, a Family Court judge must conduct an independent *de novo* review of the record to determine whether the portions of the commissioner's order to which an objection has been raised should be accepted, rejected, or modified in whole or in part.[6] Our review of a decision of the Family Court extends to a review of the facts and law, as well as inferences and deductions made by the trial judge.[7] Our duty is to review the sufficiency of the evidence and to test the propriety of the findings.[8] Findings of fact will not be disturbed on appeal unless they are clearly erroneous.[9] If the Family Court correctly applied the law to the facts, we review its decision for abuse of discretion.[10] "When the determination of facts turns on a question of the credibility and the acceptance or rejection of the testimony of witnesses appearing before the trier of fact, we will not substitute our opinion for that of the trier of fact."[11] To

---

[6] 10 *Del. C.* § 915(d)(1).

[7] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).

[8] *Id.*

[9] *Id.*

[10] *Clark v. Clark*, 47 A.3d 513, 517 (Del. 2012).

[11] *Shimel v. Shimel*, 2019 WL 2142066, at *2 (Del. May 14, 2019) (citations omitted).

obtain a PFA order, a petitioner must establish by a preponderance of the evidence that the respondent has committed an act of domestic violence.[12]

(7)  Vincent raises four arguments on appeal: (i) he was deprived of due process because Michaels' PFA petition did not put him on notice that his driving could form the basis of a finding of abuse; (ii) the Family Court erred when it determined that Vincent's driving constituted a "course of conduct" as defined by 10 *Del. C.* § 1041(1)(d); (iii) the Family Court failed to perform the "reasonable-person" analysis required for a finding of abuse under Section 1041(1)(i); and (iv) the Family Court erred when it held that the justification defense is not available to a respondent in PFA proceedings.

(8)  Although Vincent's dangerous driving was not cited in Michaels' PFA petition, it was inextricably intertwined with the parties' August 2023 confrontation cited in the petition.  As both parties testified and the video evidence showed, the parties began arguing about Vincent's driving in the car.  Both parties also testified that they continued to argue about Vincent's driving as they returned to the hotel room.  And the video evidence documenting the aftermath of their physical altercation—evidence that Vincent himself created without Michaels' knowledge—demonstrated that the parties continued to fight about Vincent's driving long after

---

[12] *Stuart v. Stuart*, 2017 WL 1090543, at *1 (Del. Mar. 22, 2017).

the fact. We note, too, that: (i) Vincent had, and exercised, his right to be heard and defend his driving, (ii) Vincent detailed the parking lot incident in *his* cross-PFA petition, and (iii) Vincent introduced into evidence the video recordings that ultimately buttressed Michaels' testimony that his driving caused her to feel threatened. In short, the omission of Vincent's driving from Michaels' PFA petition did not violate his procedural due process rights.[13]

(9)　Vincent next argues that his "single incident of driving" did not constitute a "course of conduct" under Section 1041(1)(d).[14] Assuming, *arguendo*, that Vincent's repeated failure to comply with Michaels' persistent pleas for him to slow down did not constitute a course of conduct, we find it evident that the Family Court's PFA judgment should be affirmed on the basis of its finding that Vincent's physical restraint of Michaels in their hotel room constituted abuse because it was "conduct which a reasonable person under the circumstances would find threatening or harmful" under Section 1041(1)(i).

(10)　Vincent also argues that the Family Court erred because it did not engage in a robust analysis of the reasonable-person standard that he claims is

---

[13] *See Tsipouras v. Tsipouras*, 677 A.2d 493, 496 (Del. 1996) (observing that procedural due process requires that parties whose rights are to be affected by the proceedings are entitled to notice and the opportunity to be heard).

[14] 10 *Del. C.* § 1041(1)(d) (defining "abuse" as "[e]ngaging in a course of alarming or distressing conduct in a manner which is likely to cause fear or emotional distress or to provoke a violent or disorderly response, including conduct that is directed towards any companion animal or service animal").

required by Section 1041(1)(i). We disagree. The Family Court made the following findings of fact relevant to a reasonable-person analysis: (i) Vincent restrained Michaels in the hotel room; (ii) while restrained, Michaels screamed for help; (iii) Vincent admitted that he told Michaels that he hoped people would respond to her cries so that they could witness their encounter; and (iv) Michaels was scared. Those findings of fact support the Family Court's conclusion that a reasonable person would find Vincent's conduct threatening or harmful.

(11) Finally, Vincent argues that the Family Court erred in its review of the commissioner's PFA order because it found that a justification defense is not available in PFA proceedings. After the court opined that "the criminal defense of justification for use of force in self-protection does not apply to this civil proceeding,"[15] it nevertheless proceeded to consider the evidence presented and concluded that Vincent's use of force was not justified under the circumstances. Although a justification defense is not expressly contemplated in the PFA statutory framework, it is expressly included in the Child Protection from Domestic Violence Act.[16] It follows that reasonable acts of self-defense may be justified in the PFA context. We therefore affirm the Family Court's judgment because we agree that

---

[15] App. to Opening Br. at A1263.

[16] 13 *Del. C.* § 703A(a) ("Domestic violence" does not include reasonable acts of self-defense by 1 parent for self-protection or to protect the child from abuse or threats of abuse by the other parent or other adult living in the child's home).

Vincent's purported acts in self-defense were neither justified nor reasonable under the circumstances.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

*/s/ N. Christopher Griffiths*
Justice
